## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

IZARIAH JUMP, and
ESTATE OF JONAH MARCINIAK,
by Special Administrator, Brenda Mroch

       Plaintiffs,

   and

DEAN HEALTH PLAN, INC.,

       Involuntary Plaintiff,

v.                                Case No.:

VILLAGE OF SHOREWOOD,
THOMAS LIEBENTHAL,
CODY J. SMITH, and
NICOLAS TARABOI,

       Defendants.

## FEDERAL COMPLAINT

Plaintiffs, IZARIAH JUMP and ESTATE OF JONAH MARCINIAK, by their attorneys, Samster, Konkel & Safran, S.C. and People's Law Office, for their Complaint against Defendants, VILLAGE OF SHOREWOOD, THOMAS LIEBENTHAL, CODY J. SMITH and NICOLAS TARABOI, state as follows:

### INTRODUCTION

1.    This is a federal civil rights action brought by Izariah Jump and Estate of Jonah Marciniak to obtain compensatory damages, punitive damages, costs and attorneys' fees for the serious personal injuries and resulting death of Jonah

Marciniak ("Jonah"). On August 15, 2016, Village of Shorewood police officers unlawfully arrested or detained Jonah, unreasonably searched Jonah, deprived Jonah of his substantive and procedural due process rights, failed to provide medical care and attention, including mental health care and attention, for Jonah and failed to protect Jonah from self-harm, resulting in his death.

## JURISDICTION AND VENUE

### Jurisdiction

2.      This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and Title 42 of the United States Code, Section 1983. The court has jurisdiction over the Plaintiffs' federal claims pursuant to Title 28 of the United States Code, Sections 1331 and 1343. The court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to Title 28 of the United States Code, Section 1367.

### Venue

3.      The Eastern District of Wisconsin is the proper federal venue for this action, pursuant to Title 28 of the United States Code, Section 1391(b), because it is the judicial district where the constitutional rights violations suffered by the Plaintiffs occurred.

## PARTIES

### Plaintiffs

4.      Plaintiff, Izariah Jump, is an adult residing in the State of Maine, and is the biological child of Jonah Marciniak, deceased. Plaintiff, Izariah Jump, was a

16-year-old minor at the time of the incident on August 15, 2016, having reached the age of majority on August 27, 2018.

5.     Plaintiff, Estate of Jonah Marciniak, proceeds in this action through its Special Administrator, Brenda Mroch.

## Involuntary Plaintiffs

6.     Involuntary Plaintiff, Dean Health Plan, Inc., is a health insurance company licensed to do business in the State of Wisconsin, whose principal offices are located at 1277 Deming Way, City of Madison, State of Wisconsin, 53717. At all times material hereto, said Involuntary Plaintiff claims to have made payments for medical care incurred on behalf of Jonah Marciniak by reason of the acts of the Defendants. Said Involuntary Plaintiff therefore is a proper party to this action.

## Defendants

7.     Defendant, the Village of Shorewood ("Shorewood"), at all times material hereto, was a municipal corporation, organized and existing under the laws of the State of Wisconsin, whose principal offices are located at 3930 North Murray Avenue, Village of Shorewood, State of Wisconsin, 53211.

8.     Defendant, Thomas Liebenthal ("Defendant Liebenthal"), upon information and belief, at all times material hereto, was an adult resident of the State of Wisconsin, and was a Shorewood Police Department ("SPD") police lieutenant employed by Shorewood. At all times material hereto, Defendant Liebenthal was acting under color of law, was carrying out his duties as a SPD

3

police lieutenant, and was acting within the scope of his employment with Shorewood.

9. Defendant, Cody J. Smith ("Defendant Smith"), upon information and belief, at all times material hereto, was an adult resident of the State of Wisconsin, and was a SPD police sergeant employed by Shorewood. At all times material hereto, Defendant Smith was acting under color of law, was carrying out his duties as a SPD police sergeant, and was acting within the scope of his employment with Shorewood.

10. Defendant, Nicolas Taraboi ("Defendant Taraboi"), upon information and belief, at all times material hereto, was an adult resident of State of Wisconsin, and was a SPD police officer employed by Shorewood. At all times material hereto, Defendant Taraboi was acting under color of law, was carrying out his duties as a SPD police officer, and was acting within the scope of his employment with Shorewood

## FACTS

11. Prior to August 15, 2016, the SPD had significant contact with Jonah and had knowledge of and experience observing Jonah's mental health and substance abuse issues.

12. On August 12, 2016, the SPD made contact with Jonah for an apparent drug overdose.

13. During the contact on August 12, 2016, Jonah informed SPD Police Officer Matthew Grams that he suffered from depression.

14. On August 13, 2016, the SPD made contact with Eric Harper, who was Jonah's roommate.

15. During the contact on August 13, 2016, Eric Harper told SPD Police Officer Andrew Rukuski that Jonah had previously overdosed on narcotics and had attempted suicide in the past.

16. During the contact on August 13, 2016, Eric Harper also informed SPD Police Officer Rukuski that Jonah suffered from several types of mental illness, including depression, anxiety and bi-polar disorders.

17. During the contact on August 13, 2016, Eric Harper also informed SPD Police Officer Rukuski that Jonah called his mother for help with his current depressed state of mind.

18. The following facts pertain to contact between the SPD and Jonah on August 15, 2016.

19. At approximately 1:36 AM, SPD police officers responded to a call reporting that a male subject (later identified as Eric Harper) had fallen out of a fourth story window in a building on the 4400 block of North Oakland Avenue.

20. Responding SPD police officers found the male subject lying on the ground, and determined that he had fallen from a window in Apartment 10 of the building located at 4422 North Oakland Avenue.

21. When Defendant Smith arrived at the scene, he learned that the SPD had been at the same residence a few weeks earlier for a disturbance and also had been there only a few days earlier for a drug overdose incident involving Jonah.

5

22.     Defendant Smith decided that the SPD should enter Apartment 10 out of concern for the safety of anyone who might be inside, and because the SPD had recently been there for the drug overdose incident.

23.     The SPD first attempted entry into Apartment 10 by announcing their presence multiple times, but they received no response.

24.     In announcing their presence, the SPD police officers banged loudly on both doors of Apartment 10 and rang the buzzer for the apartment for approximately one minute.

25.     After there was no response to the SPD police officers' repeated attempts to enter Apartment 10, the North Shore Fire Department ("NSFD") tried two different methods to gain access to the apartment before being able to forcibly open the door to the apartment.

26.     Defendant Smith, Defendant Taraboi and SPD Police Officer Cody Smith entered Apartment 10.

27.     After conducting a loud search of Apartment 10, the SPD police officers found a subject (later identified as Jonah) lying face down and naked on a bed in the last room they searched.

28.     Jonah had very shallow breaths and did not respond to the SPD police officers' multiple attempts to wake him.

29.     The SPD police officers screamed commands at Jonah, but there were no movements from him.

30. The SPD police officers also shook Jonah in an attempt to get a response.

31. After the SPD police officers' attempts to wake Jonah failed, Defendant Smith rolled Jonah onto his back, at which time SPD Police Officer Cody Smith stated that he recognized Jonah from the prior disturbance and overdose complaints.

32. Defendant Smith was present when SPD Police Officer Cody Smith stated that he recognized Jonah from the prior disturbance and overdose complaints.

33. It was obvious to all present that Jonah was impaired.

34. Defendant Taraboi believed that Jonah may have used heroin, because Jonah's pupils were very large and he was slow in responding to the SPD police officers.

35. After being shaken and rolled over by the SPD police officers, Jonah finally woke up, but he was lethargic.

36. Based upon Defendant Smith's knowledge of Jonah's impaired condition, Jonah's failure to respond to the SPD police officers, and Jonah's overdose history, Defendant Smith requested that the NSFD evaluate Jonah.

37. Defendant Smith then contacted Defendant Liebenthal to advise him of the situation.

38.     Without either reasonable suspicion or probable cause to believe that Jonah had committed, was committing, or was about to commit a crime, Defendant Liebenthal ordered Defendant Smith to take Jonah into police custody.

39.     The SPD took Jonah into custody despite the fact that Defendant Taraboi had reviewed a cell phone recording from a witness which established that Eric Harper fell from the window on his own and while calling for help, and without being pushed out of the window by Jonah or anyone else.

40.     Prior to taking Jonah into custody, Defendant Smith failed to determine whether the NSFD had medically cleared Jonah (they had not).

41.     Due to Defendants' knowledge of Jonah's impaired condition, Jonah's prior overdose incident, and Jonah's prior suicide attempts, it was objectively unreasonable for the Defendants to take Jonah into police custody instead of taking action to provide Jonah with medical, including mental health, care.

42.     Defendant Smith and/or Defendant Taraboi handcuffed Jonah and placed him into the back of an SPD vehicle.

43.     Defendant Taraboi drove Jonah to the SPD police station.

44.     Defendant Taraboi knew that Jonah appeared confused during the ride to the SPD police station.

45.     No SPD police officer read Jonah his *Miranda* rights, and no SPD police officer told Jonah why he was under arrest or was being detained.

46.     Despite the fact that Jonah was handcuffed and was in the back of an SPD vehicle, and he was going to be put in jail where he would be unable to leave,

Defendant Taraboi, acknowledging that there was no probable cause for arrest, told Jonah that he was not under arrest but instead was being detained.

47.     Upon arriving at the SPD police station interior parking garage with Jonah, Defendant Taraboi exited the SPD vehicle to secure his weapon, leaving Jonah alone in the vehicle.

48.     When Defendant Taraboi returned to the SPD vehicle, he found Jonah passed out.

49.     After removing Jonah from the SPD vehicle, Defendant Taraboi and University of Wisconsin-Milwaukee ("UWM") Police Officer Kyle Gerasch held onto Jonah to escort him inside the SPD police station because Jonah had difficulty walking.

50.     Jonah was barefoot and appeared disoriented when he was being escorted inside the SPD police station.

51.     As Jonah was escorted, one of the SPD police officers had to hold up Jonah's shorts because they were falling down.

52.     Jonah was not wearing underwear, meaning that Jonah's genitals, pubic area, buttock and/or anus, upon information and belief, were exposed when his shorts were falling down.

53.     Inside the parking garage, female UWM Police Officer Sara Lagerman walked behind Jonah, meaning, upon information and belief, she could see Jonah's shorts falling down and exposing his genitals, pubic area, buttock and/or anus.

54. Upon information and belief, Defendant Taraboi observed that Jonah failed to react or respond to the fact that his genitals, pubic area, buttock and/or anus were exposed in front of multiple police officers, including a female police officer, further evidencing Jonah's physical and mental impairment to the Defendants.

55. Defendant Taraboi and the two UWM police officers took Jonah to the SPD police station interview room.

56. Defendant Taraboi did not activate the camera inside the interview room.

57. Despite telling Jonah that he was not under arrest but was being detained, and despite lacking any reasonable suspicion to search Jonah, Defendant Taraboi and the two UWM police officers searched Jonah inside the interview room.

58. During the search and in the presence of Defendant Taraboi, Jonah had dexterity issues due to his impaired condition and was unable to remove a beaded necklace he was wearing.

59. Jonah became frustrated and ripped the necklace off, causing the beads to scatter.

60. Upon information and belief, Jonah's shorts were falling down during the search, exposing his genitals, pubic area, buttocks and/or anus and rendering the search a strip search pursuant to Wisconsin Statute Section 968.255(1)(b).

61.     Female UWM Police Officer Lagerman was present during the search of Jonah and, upon information and belief, observed Jonah's genitals, pubic area, buttocks and/or anus.

62.     The search of Jonah in the interview room lasted three to four minutes.

63.     Despite knowing Jonah's history of mental health issues, attempted suicide and drug overdoses, and despite observing Jonah's obviously disoriented demeanor, severely impaired state and disheveled appearance, Defendant Taraboi and Defendant Smith placed Jonah inside a jail cell alone.

64.     Defendant Taraboi and Defendant Smith's decision to place Jonah inside the jail cell alone was objectively unreasonable given the evidence and the strong likelihood that Jonah was a danger to himself.

65.     Defendants failed to consider other options such as transporting Jonah to a facility where he could get the medical care, including the mental health care, he needed or simply holding Jonah in the interview room where he would have been under constant video surveillance.

66.     The decision by Defendant Taraboi and Defendant Smith to place Jonah inside a jail cell instead of the interview room violated SPD Policy and Procedure Number 3-10, Section VII(C), which requires that prisoners who are or may be suicidal, such as Jonah, "shall be placed in an interrogation room under close observation, including the use of a video camera and monitor, with frequent

security checks being made (at least every 15 minutes at regular intervals) for their well-being."

67.    When escorted into the cell block by Defendant Taraboi and Defendant Smith at 2:38 AM, Jonah's shorts were falling down, upon information and belief, exposing his genitals, pubic area, buttock and/or anus to the officers because he was not wearing underwear.

68.    Defendant Smith and Defendant Taraboi observed that Jonah failed to react or respond to the fact that his genitals, pubic area, buttock and/or anus were exposed to the officers, further evidencing Jonah's physical and mental impairment to the Defendants.

69.    Despite these obvious physical signs of distress, disorientation and dissociation, Defendant Taraboi and Defendant Smith placed Jonah inside a jail cell alone and gave him a blanket.

70.    Once Jonah was inside the jail cell, Defendant Taraboi completed the SPD Booking Sheet for Jonah.

71.    Defendant Taraboi is listed on the SPD Booking Sheet as the booking officer.

72.    Confirming the fact that there was no basis to arrest and/or detain Jonah, there is nothing written on the SPD Booking Sheet in the section reserved for "charges/reason for confinement."

73.    Prior to placing Jonah into the jail cell, Defendant Taraboi had knowledge of Jonah's prior suicide attempt and his prior drug overdose.

74.     Prior to Jonah's arrest or detention on August 15, 2016, Defendant Smith also knew of Jonah's history of attempted suicide and drug overdose.

75.     Defendant Smith completed the SPD Health Screening Form for Jonah.

76.     Under the section of the SPD Health Screening Form for the admitting officer's visual opinion, Defendant Smith checked "yes" to indicate that Jonah appeared to be under the influence of alcohol and drugs.

77.     In the screening questions section of the SPD Health Screening Form, the question asking whether Jonah had prior psychiatric treatment is checked "yes," but the question asking for an explanation of the psychiatric treatment is not answered.

78.     In the box on the SPD Health Screening Form indicating whether or not Jonah was placed on suicide watch, neither "yes" nor "no" was checked.

79.     At approximately 2:53 AM, and after being inside the cell for approximately 15 minutes, Jonah began moving the blanket he received from Defendant Smith around the jail cell door in a suspicious manner and in the same location where Jonah later hung himself.

80.     In response, Defendant Smith entered the cell block at 2:54 AM, had a brief conversation with Jonah, and then left the cell block.

81.     About 15 minutes later, at approximately 3:11 AM, Jonah began pounding on the jail cell door with such force that the door was visibly moving.

13

82.     In response, Defendant Smith entered the cell block at 3:12 AM, had a brief conversation with Jonah, and then left the cell block.

83.     For the next few minutes, Jonah's hands were seen moving all around the jail cell door in a suspicious manner and in the same location where Jonah later hung himself.

84.     Defendant Smith then returned to the cell block at 3:16 AM and spent several minutes trying to calm Jonah down from his obviously distressed mental state.

85.     After Defendant Smith left the cell block, Jonah's hands were again seen moving all around the jail cell door in a suspicious manner and in the same location where Jonah later hung himself.

86.     Defendant Smith entered the cell block at 3:23 AM and again spent a few minutes trying to calm Jonah down from his obviously distressed mental state, exiting the cell block at 3:26 AM.

87.     At 3:30 AM, Jonah's hands were again seen moving all around the jail cell door in a suspicious manner and in the same location where Jonah later hung himself.

88.     Defendant Smith entered the cell block at 3:33 AM, briefly looked inside Jonah's cell without speaking to Jonah, and left the cell block.

89.     A few minutes later, Jonah's hands were again seen moving all around the jail cell door in a suspicious manner and in the same location where he later hung himself.

90. Defendant Smith then closed the door to the cell block and did not enter the cell block again for over 45 minutes.

91. When Defendant Smith finally entered the cell block at 4:19 AM, he discovered Jonah hanging in his jail cell at the same location where Jonah's hands had been visible numerous times moving in a suspicious manner and where Jonah had been loudly banging on the jail cell door.

92. Defendant Smith's failure to check on Jonah between 3:33 AM and 4:19 AM violated SPD policy pertaining to persons detained in the jail, which required visual checks of prisoners every 30 minutes.

93. Defendant Smith also violated SPD policy which required visual checks of mentally unstable prisoners every 15 minutes.

94. While at the SPD police station, there were obvious signs that there was a strong likelihood that Jonah would attempt to harm himself, as set forth in the subsequent paragraphs.

95. Jonah was severely intoxicated and appeared disoriented.

96. Jonah was wearing his t-shirt inside out and backwards.

97. Jonah's shorts were falling down and, upon information and belief, exposing his genitals, pubic area, buttock and/or anus because he was not wearing underwear.

98. Upon information and belief, Jonah did not react or respond to the fact that his genitals, pubic area, buttock and/or anus were being exposed in the presence of several police officers, including a female officer.

99. Jonah was being disruptive inside the jail cell, by pounding on his mattress and pounding against the metal wall of his cell.

100. Jonah's hands were seen moving several times in a suspicious manner all around the jail cell door in the same location where he later hung himself, which is likely when he was fashioning a noose from which to hang himself.

101. Defendant Smith had to repeatedly attempt to calm Jonah down.

102. In his last attempt to calm Jonah down, Defendant Smith commented on Jonah's son and told Jonah that his son would not want to see Jonah in the intoxicated and agitated state he was in and would not want Jonah to act in a disruptive manner.

103. Apparently realizing that it was objectively unreasonable to close the cell block door and fail to check on Jonah for over 45 minutes, Defendant Smith altered the SPD Booking Sheet after he found Jonah hanging.

104. Defendant Smith wrote on the SPD Booking Sheet that he had checked on Jonah at 4:00 AM, when in fact he had performed no such check.

105. Defendant Smith only admitted to altering the SPD Booking Sheet after being interviewed for the third time about the incident with Jonah and being confronted with video showing that he had taken the SPD Booking Sheet from the jail area after he found Jonah hanging.

106. The Whitefish Bay Police Department ("WBPD") provided mutual aid to the SPD following Jonah's hanging.

107. WBPD Police Sergeant Dan Courtier responded to the SPD police station.

108. Defendant Smith lied to WBPD Police Sergeant Courtier, telling him he had checked on Jonah at 4:00 AM.

109. As a result of Defendant Smith's alteration of the SPD Booking Sheet and his false statements to investigators, the State of Wisconsin criminally charged Defendant Smith with obstructing a law enforcement officer.

110. Defendant Smith pleaded guilty to the charge, and resigned from the SPD.

111. As a direct result of the conduct of Defendant Liebenthal, Defendant Smith and Defendant Taraboi on August 15, 2016, Jonah suffered severe physical injuries, which required hospitalization and resulted in his death on August 21, 2016.

112. The conduct of Defendant Liebenthal, Defendant Smith and Defendant Taraboi, as set forth in the preceding paragraphs, was the proximate cause of Jonah's severe physical injuries, death and the resulting damages.

113. The conduct of Defendant Liebenthal, Defendant Smith and Defendant Taraboi, as set forth in the preceding paragraphs, was objectively unreasonable, intentional, purposeful, knowing, and/or negligent, and undertaken with malice and/or reckless disregard of Jonah's constitutional rights and safety.

114. On December 6, 2016, Brenda Mroch timely served Shorewood with a Wisconsin Statute Section 893.80(1d)(a) Notice of Circumstances of Claim.

115. On March 26, 2019, Plaintiffs timely served Shorewood with a Wisconsin Statute Section 893.80(1d)(b) Notice of Claim.

116. By certified letter dated May 22, 2019, Shorewood denied the Plaintiffs' claim pursuant to Wisconsin Statute Section 893.80(1g).

## CAUSES OF ACTION

### First Cause of Action
### Title 42, United States Code, Section 1983
### False Arrest/Unlawful Detention against
### Defendant Liebenthal, Defendant Smith and Defendant Taraboi

117. Plaintiffs re-allege, and incorporate by reference, the allegations of the preceding paragraphs.

118. Defendant Liebenthal, Defendant Smith and/or Defendant Taraboi arrested and/or detained Jonah.

119. Defendant Liebenthal, Defendant Smith and/or Defendant Taraboi did not have probable cause to arrest Jonah.

120. Defendant Liebenthal, Defendant Smith and/or Defendant Taraboi did not have reasonable suspicion to detain Jonah.

121. Defendant Liebenthal, Defendant Smith and/or Defendant Taraboi acted under color of law.

122. The false arrest and/or unlawful detention of Jonah by Defendant Liebenthal, Defendant Smith and/or Defendant Taraboi resulted in damages to the Plaintiffs.

## Second Cause of Action
## Title 42, United States Code, Section 1983
## Unreasonable Search against Defendant Taraboi

123. Plaintiffs re-allege, and incorporate by reference, the allegations of the preceding paragraphs.

124. Defendant Taraboi searched Jonah.

125. Defendant Taraboi did not have reasonable suspicion to search Jonah.

126. Defendant Taraboi acted under color of law.

127. The unreasonable search of Jonah by Defendant Taraboi resulted in damages to the Plaintiffs.

## Third Cause of Action
## Title 42, United States Code, Section 1983
## Deprivation of Substantive Due Process against Defendant Taraboi

128. Plaintiffs re-allege, and incorporate by reference, the allegations of the preceding paragraphs.

129. Jonah had a constitutionally protected right to body integrity.

130. As set forth in the preceding paragraphs, Defendant Taraboi deprived Jonah of his constitutionally protected right to body integrity by conducting a strip search of Jonah.

131. Defendant Taraboi intentionally deprived Jonah of his constitutionally protected right to body integrity.

132. The conduct of Defendant Taraboi in depriving Jonah of his constitutionally protected right to body integrity was arbitrary, egregious, outrageous and conscious-shocking.

133. Defendant Taraboi acted under color of law.

134. The deprivation of Jonah's constitutionally protected right to body integrity by Defendant Taraboi resulted in damages to the Plaintiffs.

**Fourth Cause of Action**
**Title 42, United States Code, Section 1983**
**Deprivation of Procedural Due Process against Defendant Taraboi**

135. Plaintiffs re-allege, and incorporate by reference, the allegations of the preceding paragraphs.

136. By enacting Wisconsin Statute Section 968.255, the State of Wisconsin created liberty interests in (a) requiring a strip search be conducted by a person who is the same sex as the person to be searched and (b) prohibiting the person to be strip searched from being exposed to the view of any person not conducting the strip search.

137. The liberty interests set forth in Wisconsin Statute Section 968.255 are entitled to due process protection.

138. As set forth in the preceding paragraphs, Defendant Taraboi deprived Jonah of the liberty interests set forth in Wisconsin Statute Section 968.255 without any process or procedure.

139. Defendant Taraboi intentionally deprived Jonah of the liberty interests set forth in Wisconsin Statute Section 968.255.

140. Defendant Taraboi acted under color of law.

141. The deprivation of Jonah's liberty interests set forth in Wisconsin Statute Section 968.255 by Defendant Taraboi resulted in damages to the Plaintiffs.

## Fifth Cause of Action
### Title 42, United States Code, Section 1983
### Failure to Provide Medical Care for Arrestee against
### Defendant, Liebenthal, Defendant Smith and Defendant Taraboi

142. Plaintiffs re-allege, and incorporate by reference, the allegations of the preceding paragraphs.

143. Jonah was under arrest.

144. Jonah needed medical care, including mental health care.

145. Defendant Liebenthal, Defendant Smith and Defendant Taraboi failed to take action to provide medical care, including mental health care, to Jonah.

146. Defendant Liebenthal, Defendant Smith and Defendant Taraboi's failure to take action to provide medical care, including mental health care, to Jonah was objectively unreasonable.

147. Defendant Liebenthal, Defendant Smith and Defendant Taraboi acted under color of law.

148. The failure to take action to provide medical care, including mental health care, to Jonah by Defendant Liebenthal, Defendant Smith and Defendant Taraboi resulted in damages to Plaintiffs.

## Sixth Cause of Action
### Title 42, United States Code, Section 1983
### Failure to Provide Medical Attention against
### Defendant Smith and Defendant Taraboi

149. Plaintiffs re-allege, and incorporate by reference, the allegations of the preceding paragraphs.

150. Jonah had a serious medical need, including a serious mental health need.

151. Defendant Smith and Defendant Taraboi were aware that Jonah had a serious medical need, including a serious mental health need.

152. It was obvious to Defendant Smith and Defendant Taraboi that Jonah had a serious medical need, including a serious mental health need.

153. Defendant Smith and Defendant Taraboi consciously failed to take reasonable measures to provide treatment for Jonah's serious medical need, including Jonah's serious mental health need

154. Defendant Smith and Defendant Taraboi's failure to take reasonable measures to provide treatment for Jonah's serious medical need, including Jonah's serious mental health need, was objectively unreasonable.

155. Defendant Smith and Defendant Taraboi acted under color of law.

156. The failure to take reasonable measures to provide treatment for Jonah's serious medical need, including Jonah's serious mental health need, by Defendant Smith and Defendant Taraboi resulted in damages to Plaintiffs.

## Seventh Cause of Action
### Title 42, United States Code, Section 1983
### Failure to Protect from Self-Harm against
### Defendant Smith and Defendant Taraboi

157. Plaintiffs re-allege, and incorporate by reference, the allegations of the preceding paragraphs.

158. There was a strong likelihood that Jonah would seriously harm himself in the near future in the SPD jail cell.

22

159. Defendant Smith and Defendant Taraboi were aware of the strong likelihood that Jonah would seriously harm himself in the near future in the SPD jail cell.

160. It was obvious to Defendant Smith and Defendant Taraboi that there was a strong likelihood that Jonah would seriously harm himself in the near future in the SPD jail cell.

161. Defendant Smith and Defendant Taraboi consciously failed to take reasonable measures to prevent Jonah from harming himself in the near future in the SPD jail cell.

162. The failure by Defendant Smith and Defendant Taraboi to take reasonable measures to prevent Jonah from harming himself in the SPD jail cell was objectively unreasonable.

163. Jonah would have survived if Defendant Smith and Defendant Taraboi had taken reasonable measures to prevent Jonah from harming himself in the SPD jail cell.

164. Defendant Smith and Defendant Taraboi acted under color of law.

165. The failure to protect Jonah from self-harm by Defendant Smith and Defendant Taraboi resulted in damages to the Plaintiffs.

**Eighth Cause of Action**
**Title 42, United States Code, Section 1983**
**Loss of Society and Companionship against**
**Defendant Liebenthal, Defendant Smith and Defendant Taraboi**

166. Plaintiffs re-allege, and incorporate by reference, the allegations of the preceding paragraphs.

167. The conduct of Defendant Liebenthal, Defendant Smith and Defendant Taraboi, as set forth in the preceding paragraphs and which resulted in the death of Jonah, deprived Izariah Jump of the love, society and companionship of his father during the time that Izariah Jump was a minor.

### Ninth Cause of Action
### Wisconsin State Law
### False Arrest without Warrant against
### Defendant Liebenthal, Defendant Smith and Defendant Taraboi

168. Plaintiffs re-allege, and incorporate by reference, the allegations in the preceding paragraphs.

169. Defendant Liebenthal, Defendant Smith and Defendant Taraboi did not have reasonable grounds to believe that Jonah was committing or had committed a crime.

170. Defendant Liebenthal, Defendant Smith and Defendant Taraboi arrested Jonah without a warrant.

171. The false arrest of Jonah by Defendant Liebenthal, Defendant Smith and Defendant Taraboi resulted in damages to the Plaintiffs.

### Tenth Cause of Action
### Wisconsin Statute Section 895.04
### Wrongful Death against
### Defendant Liebenthal, Defendant Smith and Defendant Taraboi

172. Plaintiffs re-allege, and incorporate by reference, the allegations in the preceding paragraphs.

173. Jonah is survived by his son Izariah Jump, who constitutes Jonah's heir under Wisconsin law.

24

174. The conduct of Defendant Liebenthal, Defendant Smith and Defendant Taraboi, as set forth in the preceding paragraphs, was a proximate cause of the wrongful death of Jonah.

175. The wrongful conduct of Defendant Liebenthal, Defendant Smith and Defendant Taraboi, as set forth in the preceding paragraphs, resulted in damages to the Plaintiffs.

**Eleventh Cause of Action**
**Wisconsin Statute Section 895.46**
**Indemnification against Shorewood**

176. Plaintiffs re-allege, and incorporate by reference, the allegations in the preceding paragraphs.

177. At all times material hereto, Defendant Liebenthal, Defendant Smith and Defendant Taraboi were carrying out their duties as SPD officers, and were acting within the scope of their employment with Shorewood.

178. The conduct of Defendant Liebenthal, Defendant Smith and Defendant Taraboi, as set forth in the preceding paragraphs, resulted in damages to the Plaintiffs.

179. Shorewood is liable, pursuant to Wisconsin Statute Section 895.46, for any judgment entered against Defendant Liebenthal, Defendant Smith and Defendant Taraboi in this action because, at all times material hereto, Defendant Liebenthal, Defendant Smith and Defendant Taraboi were carrying out their duties as SPD officers, and were acting within the scope of their employment with Shorewood.

## DEMAND FOR JUDGMENT

180.  Wherefore, Plaintiffs demand judgment against the Defendants as follows:

a.  In favor of Plaintiffs and against Defendant Liebenthal, Defendant Smith and/or Defendant Taraboi, as set forth in the preceding paragraphs, for compensatory and special damages;

b.  In favor of Plaintiffs and against Defendant Liebenthal, Defendant Smith and/or Defendant Taraboi, as set forth in the preceding paragraphs, for punitive damages;

c.  In favor of Plaintiffs and against Shorewood, as set forth in preceding paragraphs, for its liability pursuant to Wisconsin Statute Section 895.46; and

d.  For all costs, disbursements, interest and reasonable attorneys' fees pursuant to Title 42 of the United States Code, Section 1988, and for such other relief as the Court deems just and equitable.

PLAINTIFFS HEREBY DEMAND A JURY TRIAL OF THIS ACTION ON ALL
ISSUES SO TRIABLE.

*s/Jonathan S. Safran*
Jonathan S. Safran
Wisconsin State Bar No.: 1000881
Jerome A. Konkel
Wisconsin State Bar No.: 1000149
SAMSTER, KONKEL, & SAFRAN, S.C.
Attorneys for Plaintiffs, Izariah Jump and
Estate of Jonah Marciniak
1110 North Old World Third Street
Suite 405
Milwaukee, WI 53203
Phone: (414) 224-0400
E-mail: jsafran@skslawyers.com
Email: jkonkel@skslawyers.com


*s/Janine L. Hoft*
Jan Susler
Illinois State Bar No.: 277840
Janine L. Hoft
Illinois State Bar No.: 6188139
Ben H. Elson
Illinois State Bar No.: 6286106
PEOPLE'S LAW OFFICE
Attorneys for Plaintiffs, Izariah Jump and
Estate of Jonah Marciniak
1180 North Milwaukee Avenue
Chicago, IL 60642
Phone: (773) 235-0070
E-mail: jsusler@gmail.com
E-mail: janinehoft@gmail.com
E-mail: ben.elson79@gmail.com

Date: August 9, 2019.