UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

IZARIAH JUMP, and
ESTATE OF JONAH MARCINIAK,
by Special Administrator, Brenda Mroch

       Plaintiffs,

  and

DEAN HEALTH PLAN, INC.,

       Involuntary Plaintiff,                Magistrate Judge Nancy Joseph

v.                                                         Case No.: 19-CV-1151

VILLAGE OF SHOREWOOD,
THOMAS LIEBENTHAL,
CODY J. SMITH, and
NICHOLAS TARABOI,

       Defendants.

---

## PLAINTIFFS' STATEMENT OF PROPOSED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Plaintiffs, Izariah Jump, and Estate of Jonah Marciniak, respectfully submit this Statement of Proposed Material Facts in Support of Their Motion for Partial Summary Judgment.

    1.    In August of 2016, Jonah Marciniak lived at 4422 North Oakland Avenue, Apartment 10 in the Village of Shorewood with Eric Harper. (Declaration of Ben H. Elson, dated February 1, 2021 ["Elson Dec."], ¶4, Exhibit 1 at p.1).

    2.    In the early morning hours of August 15, 2016, a neighbor of Jonah and Eric named Bruce Hoover heard a male voice screaming. (Elson Dec. ¶5, Exhibit 2 at p.1; Elson Dec, ¶6, Exhibit 3 at p.2).

3. Mr. Hoover spoke to his wife Tatiana Hoover, who told him to call the police because she saw someone fall from the building located 4422 North Oakland Avenue. (Elson Dec. ¶6, Exhibit 3 at p.2).

4. Mr. Hoover went outside and found a man lying on the grass outside of the building located 4422 North Oakland Avenue. (Elson Dec. ¶5, Exhibit 2 at p.1; Elson Dec. ¶6, Exhibit 3 at p.2).

5. At 1:34 a.m., Mr. Hoover called 911 to report that a man had fallen out of a third or fourth story window. (Elson Dec. ¶7, Exhibit 4 at pp.1-2).

6. While relaying information about the man falling from the window, Mr. Hoover told the 911 operator that his wife "saw it happen." (Elson Dec. ¶7, Exhibit 4 at p.1).

7. At no point during the 911 call did Mr. Hoover report a domestic violence incident or that any other crime had occurred. (Elson Dec. ¶7, Exhibit 4 at pp.1-3).

8. Mr. Hoover went back inside his residence and learned that his wife had recorded the incident on her cell phone. (Elson Dec. ¶5, Exhibit 2 at p.1; Elson Dec. ¶8, Exhibit 5 at p.2).

9. Ms. Hoover's cell phone recording of the incident is two minutes and five seconds long. (Elson Dec. ¶8, Exhibit 5 at p.2; Elson Dec. ¶14, Exhibit 11).

10. Very little is visible on Ms. Hoover's cell phone recording of the incident due to it being recorded at night, but the recording contains intelligible audio. (Elson Dec. ¶8, Exhibit 5 at p.2; Elson Dec. ¶14, Exhibit 11).

11. At approximately 53 seconds into the cell phone recording, the same male voice states "wake your fucking ass up and pull me into the fucking house." (Elson Dec. ¶8, Exhibit 5 at p.2; Elson Dec. ¶14, Exhibit 11).

2

12. The same male voice in the video then can be heard stating, "Jonah, pull me into the house, Jonah, Jonah." (Elson Dec. ¶8, Exhibit 5 at p.2; Elson Dec. ¶14, Exhibit 11).

13. At approximately one minute and 20 seconds into the cell phone recording, the same male voice becomes louder as he starts yelling, "help me, help me now, pull me back onto the house, Jonah, Jonah, pull me back into the fucking house, Jonah, Jonah." (Elson Dec. ¶8, Exhibit 5 at p.2; Elson Dec. ¶14, Exhibit 11).

14. At one minute 58 seconds into the cell phone recording, the same male voice is heard stating "oh my God," then two loud bangs can be heard. (Elson Dec. ¶8, Exhibit 5 at p.2; Elson Dec. ¶14, Exhibit 11).

15. Only one voice is ever heard on the cell phone recording, which increases in volume before the sound of a fall, there is no video or audio in the cell phone recording of anyone being violent toward the man, or any crime occurring. (Elson Dec. ¶8, Exhibit 5 at p.2; Elson Dec. ¶12, Exhibit 8 at p.75:12 to p.77:15; Elson Dec. ¶14, Exhibit 11).

16. At 1:35 a.m., a dispatch call was made to Shorewood Police Department ("SPD") officers instructing them to respond to the 4400 block of Oakland Avenue "for a male subject that fell out of a fourth story window." (Elson Dec. ¶7, Exhibit 4 at p.3).

17. There is nothing in the dispatch call to SPD officers for the 4400 block of Oakland Avenue stating that domestic violence or any other crime had occurred. (Elson Dec. ¶7, Exhibit 4 at p.3).

18. At 1:35 a.m., Defendant SPD Sergeant Cody Smith, Defendant SPD Officer Nicholas Taraboi, and SPD Officers Theron Rogers and Cody Smith responded to the dispatch call. (Elson Dec. ¶9, Exhibit 6 at p.22:21 to p.24:24; Elson Dec. ¶10, Exhibit 7 at p.1).

19. Defendant Smith knew Jonah from a prior domestic violence incident at the same location approximately two weeks earlier. (Elson Dep. ¶11, Exhibit 8 at p.34:15 to p.41:22).

20. When the SPD officers arrived on scene, they found a male lying on the ground (later determined to be Eric Harper) who appeared to have fallen from an open window. (Elson Dec. ¶9, Exhibit 6 at p.24:25 to p.26:19).

21. Members of the North Shore Fire Department arrived on the scene within a minute of the SPD officers. (Elson Dec. ¶9, Exhibit 6 at p.28:17-23).

22. Defendants Smith and Taraboi observed Eric speaking with members of the North Shore Fire Department but do not know or recall what was said. (Elson Dec. ¶9, Exhibit 6 at p.29:3-11; Elson Dec. ¶12, Exhibit 8 at p.131:8, 132:3-12)

23. Defendant Smith directed SPD Officer Rogers to go to the hospital with Eric. (Elson Dec. ¶12, Exhibit 8 at p.56:16-18).

24. Defendant Smith, Defendant Taraboi, and Officer Smith decided to enter the building to do a welfare check in the apartment from which Eric fell. (Elson Dec. ¶9, Exhibit 6 at p.31:19-22; Elson Dec. ¶10, Exhibit 7 at p.55:4-25).

25. Defendant Smith knew that there was cell phone recording of Eric falling out of the window, but Defendant Smith did not review the video prior to entering the building. (Elson Dec. ¶11, Exhibit 8 at p.49:23 to p.50:23 and at p.52:15 to p.53:17).

26. Defendant Smith believes that he directed Defendant Taraboi to retrieve the cell phone recording. (Elson Dec. ¶11, Exhibit 8 at p.52:15-21).

27. Defendant Smith, Defendant Taraboi, and Officer Smith, along with two members of the North Shore Fire Department, entered the building and went to check on the apartment from which Eric fell, which was Apartment 10. (Elson Dec. ¶9, Exhibit 6 at p.32:7-23).

4

28. Defendant Smith, Defendant Taraboi and Officer Smith knocked loudly on both doors to Apartment 10, but there was no response. (Elson Dec. ¶9, Exhibit 6 at p.33:6-17).

29. Defendant Taraboi went downstairs and rang the buzzer for Apartment 10, while Defendant Smith and Officer Smith continued to bang loudly on the door, but they received no response. (Elson Dec. ¶9, Exhibit 6 at p.33:18-24).

30. Officer Smith spoke with a man who lived across the hall from Apartment 10, who stated that there were two men who were in an intimate relationship together that had lived there, that he believed one of the men had recently moved out, and that he had previously overhead loud arguments coming from the apartment but had no knowledge of physical fights, including from that night. (Elson Dec. ¶9, Exhibit 6 at p.34:2 to p.35:2).

31. Officer Smith mentioned to Defendant Smith and Defendant Taraboi that a few days earlier SPD officers responded to the same apartment building where Jonah had overdosed on heroin, was revived, and was taken either to the hospital or the Milwaukee County Mental Health Complex for treatment. (Elson Dec. ¶9, Exhibit 6 at p.35:8 to p.37:18).

32. Defendant Smith, Defendant Taraboi, and Officer Smith decided to make a forced entry into Apartment 10 to check on the welfare on anyone who might be inside and to investigate any possible crime. (Elson Dec. ¶9, Exhibit 6 at p.37:19 to p.38:14).

33. The North Shore Fire Department forcibly opened the door to Apartment 10 using a sledgehammer and a prying tool, making loud noise as they did so. (Elson Dec. ¶9, Exhibit 6 at p.38:15-22; Elson Dec. ¶11, Exhibit 8 at p.60:4-18).

34. Defendant Smith, Defendant Taraboi, and Officer Smith entered Apartment 10. (Elson Dec. ¶9, Exhibit 6 at p.38:23 to p.39:1).

35. After entering the apartment, the SPD officers found Jonah naked and lying face down on a bed in a bedroom. He appeared to be asleep. (Elson Dec. ¶9, Exhibit 6 at p.39:2 to p.40:20).

36. In the bedroom, Defendant Smith observed shards of broken glass toward the foot of the bed, that the bed was separated from the bed frame or box spring, and possibly a busted lamp or a pushed-in lamp shade. (Elson Dec. ¶11, Exhibit 8 at p.63:7-23, p.77:1 to 78:5; Elson Dec. ¶15, Exhibit 12).

37. Defendant Smith, Defendant Taraboi, and Officer Smith screamed commands at Jonah for him to show his hands, but Jonah did not move. (Elson Dec. ¶9, Exhibit 6 at p.40:1-5).

38. It appeared to Defendant Taraboi that Jonah had very shallow breaths. (Elson Dec. ¶9, Exhibit 6 at p.40:6-8).

39. Defendant Smith, Defendant Taraboi, and Officer Smith made numerous attempts to wake Jonah by screaming and yelling at him, but Jonah did not respond. (Elson Dec. ¶9, Exhibit 6 at p.40:9-20; Elson Dec. ¶12, Exhibit 9 at p.72:23 to p.73:16).

40. After the attempts to wake Jonah by screaming and yelling at him failed, Jonah was shaken and then rolled onto his back which was when Jonah woke up. (Elson Dec. ¶9, Exhibit 6 at p.40:9 to p.41:2).

41. After Jonah was rolled over, Defendant Taraboi saw two or three blood drops on the lower part of the bed where Jonah was laying. (Elson Dec. ¶9, Exhibit 6 at p.42:12-20 and at p.43:16-22; Elson Dec. ¶15, Exhibit 12).

42. After Jonah was rolled over, Defendant Taraboi noticed two broken glasses inside the bedroom, one on an end table and one in between the bed and the window out of which Eric fell. (Elson Dec. ¶9, Exhibit 6 at p.44:12-20; Elson Dec. ¶15, Exhibit 12).

6

43. After Jonah was rolled over, Defendant Taraboi noticed that the inside window screen had been removed from the window out of which Eric fell. (Elson Dec. ¶9, Exhibit 6 at p.44:12-20; Elson Dec. ¶15, Exhibit 12).

44. After Jonah was rolled over, Defendant Taraboi noticed small shards of glass on Jonah and on the bed. (Elson Dec. ¶9, Exhibit 6 at p.46:3-10).

45. After Jonah woke up, Defendant Taraboi observed that Jonah was lethargic. (Elson Dec. ¶9, Exhibit 6 at p.41:3-5).

46. When Jonah woke up, one of the North Shore Fire Department firefighters stated that he recognized Jonah from the recent overdose incident. (Elson Dec. ¶9, Exhibit 6 at p.41:15 to p.42:3).

47. Defendant Taraboi checked Jonah for any visible injuries or other signs of him being involved in an altercation or fight, but Defendant Taraboi did not find any. (Elson Dec. ¶9, Exhibit 6 at p.47:20 to p.48:11).

48. After Jonah woke up, he was lying on the bed for two or three minutes before he sat up. (Elson Dec. ¶9, Exhibit 6 at p.48:16-20).

49. Defendant Taraboi retrieved a t-shirt, a pair of shorts and underwear for Jonah to wear. (Elson Dec. ¶9, Exhibit 6 at p.48:21 to p.49:3).

50. It took Jonah some time to put on the t-shirt and pair of shorts, and he did not put on the underwear. (Elson Dec. ¶9, Exhibit 6 at p.49:4-10).

51. While they were in the bedroom, Defendant Taraboi asked Jonah what happened prior to him being woken up by the police and whether he was involved in any kind of argument with Eric. (Elson Dec. ¶9, Exhibit 6 at p.49:11-19).

52. Jonah responded that he had fallen asleep and did not remember being involved in any argument with Eric. (Elson Dec. ¶9, Exhibit 6 at p.49:20-24).

53. Jonah also said he had a couple of drinks, and denied using heroin and denied that there was any type of fight between him and Eric. (Elson Dec. ¶9, Exhibit 6 at p.49:20 to p.50:3, p.53:13-15).

54. It appeared to Officer Smith that Jonah was intoxicated and that his speech was slurred. (Elson Dec. ¶12, Exhibit 9 at p.80:12-18).

55. Officer Smith heard Jonah asking: "Where is Eric?" (Elson Dec. ¶12, Exhibit 9 at p.80:19 to p.81:3).

56. Defendant Smith and Defendant Taraboi decided to remove Jonah from the apartment and take him into the hallway. (Elson Dec. ¶9, Exhibit 6 at p.50:7-13).

57. In the hallway, Defendant Taraboi believes he heard Jonah ask where Eric was. (Elson Dec. ¶9, Exhibit 6 at p.51:12-20).

58. In the hallway, it appeared to Defendant Taraboi that Jonah was under the influence of alcohol or drugs. (Elson Dec. ¶9, Exhibit 6 at p.53:23-25).

59. Defendant Smith and Defendant Taraboi then brought Jonah outside of the building while Officer Smith stayed behind in Apartment 10. (Elson Dec. ¶9, Exhibit 6 at p.54:6-15).

60. After Jonah was brought outside of the building, Defendant Taraboi questioned Jonah further and Jonah again denied that he fought with Eric. (Elson Dec. ¶9, Exhibit 6 at p.55:17-22).

61. It appeared to Defendant Taraboi that Jonah was confused as to what was going on, and that Jonah did not know what happened to Eric. (Elson Dec. ¶9, Exhibit 6 at p.55:23 to p.56:6).

62. Defendant Smith then called his supervisor, Defendant, SPD Lieutenant Thomas Liebenthal, to advise him of what the SPD officers found at the apartment building. (Elson Dec. ¶11, Exhibit 8 at p.71:3 to p.72:3).

63. In response, Defendant Liebenthal stated to Defendant Smith: "Well, we should probably bring him in and call in a detective." (Elson Dec. ¶11, Exhibit 8 at p.71:3 to p.72:3).

64. Defendant Smith instructed Defendant Taraboi to handcuff Jonah and transport him to the SPD police station. (Elson Dec. ¶11, Exhibit 8 at p.73:5-20).

65. Defendant Taraboi then handcuffed Jonah and placed him inside an SPD squad car. (Elson Dec. ¶9, Exhibit 6 at p.61:3-11).

66. Defendant Taraboi has admitted that Jonah was under arrest as soon as he was handcuffed and placed in the SPD squad car. (Elson Dec. ¶9, Exhibit 6 at p.17:4-11).

67. Defendant Taraboi does not know why no one is identified as the arresting officer of Jonah on the SPD booking sheet, even though Defendant Taraboi arrested Jonah. (Elson Dec. ¶9, Exhibit 6 at p.77:9 to p.78:5).

68. Defendant Taraboi has admitted that the "Charges/Reasons for Confinement" section of the SPD booking sheet was left blank because the SPD officers were not sure for what charge Jonah was arrested. (Elson Dec. ¶9, Exhibit 6 at p.78:6-13).

69. No SPD officer read Jonah his *Miranda* rights when he was arrested. (Elson Dec. ¶9, Exhibit 6 at p.61:6-11).

70. Defendant Taraboi transported Jonah to the SPD police station. (Elson Dec. ¶9, Exhibit 6 at p.63:18 to p.64:16).

71. Defendant Smith has admitted that Jonah was under arrest after he was removed from the apartment. (Elson Dec. ¶11, Exhibit 8 at p.82:10 to p.83:8).

72. Defendant Liebenthal has admitted that when the SPD moves a person and brings them to the SPD police station, the person has been arrested. (Elson Dec. ¶13, Exhibit 10 at p.74:25 to p.75:10).


Dated: February 1, 2021    Respectfully submitted,

/s/ Ben H. Elson
One of Plaintiffs' Attorneys

| | |
|---|---|
| Ben H. Elson, Janine L. Hoft, Jan Susler | Jerome A. Konkel |
| PEOPLE'S LAW OFFICE | SAMSTER, KONKEL & SAFRAN |
| 1180 N. Milwaukee Ave. | A division of Groth Law Firm, S.C. |
| Chicago, IL 60642 | 11063 W. Bluemound Road |
| (773) 235-0070 | Wauwatosa, WI 53226 |
| | (414) 224-0200 |

10

Case 2:19-cv-01151-NJ    Filed 02/01/21    Page 10 of 10    Document 40